IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARVIN J. HUMPHREY                                                            PLAINTIFF

v.                                      Civil No. 05-2138

SHERIFF REED HAYES;
MARGARET LEWIS;
MATT HAMILTON;
RYAN CIAMPOI; JOSH
ROSS; DUSTIN BRADSHAW;
DEREK NIETERT; and
MATT KIMREY                                                      DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

The Plaintiff, Marvin Humphrey, (hereinafter "Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas, referred this case to the undersigned for the purpose of making a report and recommendation.

An evidentiary hearing regarding issues triable to a jury was conducted on September 4, 2008. Plaintiff's claims included allegations of denial of medical treatment, denial of dental treatment, unclean conditions of confinement, overcrowded facilities, access to an attorney, access to the law library, inhumane treatment, and denial of the right against self-incrimination.

**1. Background & Evidence Presented**

At the evidentiary hearing, I heard the testimony of the following witnesses in the following order: (1) Plaintiff Marvin J. Humphrey (2) Robert Standridge; (3) Charlie Rosson; (4) Bobby

Bowman; (5) Jeff O'Connor; (6) Margaret Lewis; (7) Josh Ross; (8) Ryan Ciampoi; (9) Dustin Bradshaw; (10) Matt Kimery; and (11) Matt Hamilton.  For purposes of discussion, I will summarize in the first person the testimony given at the evidentiary hearing.

*Marvin J. Humphrey, Plaintiff*

My name is Marvin J. Humphrey.

I was housed in the Franklin County Jail from May 19, 2005 until November 1, 2006.

I was having breathing trouble and was prescribed an inhaler from Cooper Clinic.

I also went to Dr. Westbrook for abdominal pains and he ordered tests which Ms. Lewis refused .

I put in a request regarding my teeth.  I saw a dentist, but he only pulled two.  The dentist said he had a limit of only pulling two at a time.  I never requested any more teeth be pulled.  They did not extract all the teeth as needed.

I did not receive my inhaler three times a day as prescribed.  (*See* Ex. 6).  I suffered headaches, shortness of breath, and light-headed.

Every 30-60 days I was to see a lung specialist, due to my asthma, but I was not taken to see the specialist.

As to the overcrowding issue, we would be locked in the day room with 26 people.  You had to sit on the floor to eat food.

There was an incident with other inmates, and I was moved from Cell 33 to 18 then to 22. (Please refer to Exhibit 1.)  I was later told I either had to go back to 33 or to the drunk tank.

I am not complaining I didn't get to see a doctor, I saw doctor Westbrook two times. My complaint is that I didn't get my inhaler as needed. I usually would only get it at 9:00 p.m. or the nightly med call. Med call is also in the morning and at noon.

I am now at Brickeys Unit of the Arkansas Department of Correction. I went through the Diagnostic Unit. The doctor told me if I quit smoking, I wouldn't have any breathing problems.

I can not read or write. I rely on other inmates to read and write for me.

I never passed out, although I came very close one day. I became short of breath and asked Defendant Ross for the inhaler and he brought it to me. Other times when I verbally asked, no one brought it.

I told the Diagnostic Unit I had asthma since I was a child. Tests were ordered, as shown in Exhibit 2B, but they were not performed. The ADC did not perform these tests, either, although I have seen doctors at the ADC many times. I do not know what the tests were for or would have revealed.

A Doctor in Bentonville told me to see a lung specialist before I was arrested. Now that I am in the ADC, a chronic care nurse sees me on a routine basis.

The records in Exhibit 5D are the only medication records provided by the Defendants to me. I do not know if they cover they year 2005 or 2006. However, seven times, the initials on the sheet are not my signature. They show I did not always get my inhaler as prescribed. It depended on which jailer was working if I received my medication.

We were locked in the day room from 6 am until 9 pm from a week to thirty days at a time. There may have been as many as 26 people in a 9 man cell.

I had a public defender appointed at the time of incarceration and was continuously represented when charged until I went to the ADC.

I don't believe the food was nutritionally adequate at the Franklin County Jail. I did gain weight, but it was due to trustees bringing me extra food.

The air ducts were dusty inside and they would blow out dust. It was worse for me due to my asthma but I never has an asthma attack while in the Franklin County Jail.

I don't know what tests were ordered but not preformed. I do not know what these tests would have shown. Ms. Lewis told me she would not pay for the tests.

### *Robert Standridge*

I do not remember the Plaintiff.

I was in the Franklin County Jail for 15 days.

I don't remember any contact with Plaintiff and I don't remember writing a statement. Even after looking at the statement, I don't remember writing it. It does not look like my signature.

My memory is not refreshed because I can't even read half of it.

I got my medication as I should have.

I was incarcerated for 15 days and brought enough medication to cover those days.

### *Charlie Rosson*

The Defendants would come around at medication time, but they weren't always passed out at the same time.

At one time there were about 15 people in the day room.

Everyday we were given cleaning supplies, sometimes we would clean, other times we would not.

I don't know about being taken to the doctor.  I never went to the doctor.

Being locked in the day room was punishment for staying up late.  All the doors would be open.

I have been in the Franklin County Jail since May 1, 2008.

Medications would be delivered regularly - three times a day.  Different jailers would come at different times to give the medication.

### *Bobby Bowman*

I was incarcerated in the Franklin County Jail from May of 2005 until November of 2006.

I was in contact with the Plaintiff while in Franklin County, and now we are in different units of the ADC.

The Franklin County Jail was overcrowded.  We were often locked in the day room although I don't know how many at one time.

Our medications were handed out every night and everyday we had the choice to clean our cells with a mop bucket.

I never requested or saw the doctor while I was in the Franklin County Detention Center.

If I saw someone having a medical problem, I would call for the guard.  I never did call anyone for the Plaintiff.

### *Jeff O'Connor*

I was incarcerated in the Franklin County Jail for three days during the time in question.

I was across the hall from Plaintiff.

Medications would be passed out at a certain time each day.

*Margaret Lewis*

I am the jail administrator at Franklin County. I was the jail administrator during the time in question.

I made the doctor's appointment for Plaintiff on September 15, 2006. I did not deny him any tests. If the doctor had made arrangements for the tests, then the tests would have been performed.

I was aware of the overcrowding issue and the locking-in of the day room. This was not punishment, but to get the inmates on a schedule where they were sleeping at night. The trustees needed to sleep to get up at 5:00 a.m.

Medications were dispensed as prescribed. There was a medical request form for appointments the inmates can fill out.

There are no bunks in the day room, but we did have more inmates than bunks throughout the jail. Overcrowding was a constant issue.

I don't remember Plaintiff, I only go into the jail occasionally.

There may be more medication logs than what we have provided to the court. We did keep one binder with all inmates' medications. Now we have one binder for each inmate.

We never have dental records sent to us.

All medical decisions are for the dentist or doctor to make.

Law books are at the sheriff's office and available to the inmates if the inmates provide volume and title.

There is access to one's attorney, and the phone is on in the day room from 9:00 a.m. until 9:00 p.m. No record is kept of attorney visits to the jail.

It is the shift on duty's responsibility to give out medications as prescribed.

I call in for refills. I call into the pharmacy and they refill. No refill was ever refused for Plaintiff.

If someone needs a follow up with a doctor, I am contacted or the transporting officer is told. I was never told that Plaintiff needed any tests. I only review medical records when there is a complaint.

We are always overcrowded, but we have added bunks since Plaintiff was housed in Franklin County.

### *Joshua Ross*

I am not currently employed with the Franklin County Jail, however I was employed there from May of 2005 until November of 2006. I was employed there during some of the time in question.

Plaintiff asked me for his inhaler, and I brought it to him.

I never saw the medical papers regarding the doctor's plan for Plaintiff's tests, nor did I take it to Margaret Lewis. The jail administrator calls in all refills.

I don't recall a lack of medication or complaints regarding a lack of medication.

I brought Plaintiff his inhaler, but I never saw him struggle to breathe.

I only dispensed medications as directed.

I could have forgotten to write down medications after I gave them out.

I never saw Plaintiff having an asthma attack.

If I was asked to bring Plaintiff his inhaler at an odd time when medications were not routinely dispensed, I would still write it on the log.

I do not have any training regarding asthma attacks.

*Ryan Ciampoi*

I am not employed at the Franklin County Jail, although I was at the time in question.

I never signed Plaintiff's name to the log.

I recognize my initial on Exhibit 5A on the date of October 6. Another employee, Rosie Clemens, has the same initials as me and would occasionally give out medications to the male inmates.

I never saw Plaintiff having an asthma attack.

I worked the 11:00 p.m. to 7:00 a.m. shift. I do not remember giving Plaintiff his inhaler.

On the dates of October 10, 11, 18, 19, 23 and 26 my initials show that I gave only a pill in the morning to Plaintiff, but no inhaler. The inhaler could have been out for a refill or I may have forgotten to write down the inhaler on the medication log.

I can tell if someone is having an asthma attack or if someone is abnormal.

*Dustin Bradshaw*

I am not currently employed with the Franklin County Jail, although I was until February of 2006.

I remember moving Plaintiff from cell 33 for protection. Other inmates found out the nature of Plaintiff's crime and he needed to be moved as prevention from any problems.

I don't know about Plaintiff being put back into danger or cell 33.

Plaintiff was never harmed while in the Franklin County Jail.

*Matthew Kimery*

I am not currently employed with the Franklin County Jail. At the time in question, I worked part time on the weekends.

I vaguely remember Plaintiff's face.

I do not remember Plaintiff being moved, nor do I remember any intimidation.

If Plaintiff was moved for protective custody reasons, I would check with the jail administrator before moving back. Protective custody worked primarily by word of mouth. All of the inmates moved around often.

I do not remember Plaintiff ever being short of breath.

### *Matt Hamilton*

I do not work in the Franklin County Jail anymore, I worked there until March of 2006.

When I worked there medications were kept in one log book, not on individual sheets for each inmate.

I remember the day room/cell 33 being locked down, I don't know how many inmates were in there when locked down.

I have had medical training in CPR and as a First Responder.

### 2. Discussion

Plaintiff claims a lack of medical and dental treatment, unclean conditions of confinement, overcrowding, denial of access to an attorney and to the law library, inhumane treatment, and a violation of the right against self-incrimination.

### *Denial of Medical Treatment*

Plaintiff's main claim is of denial of medical treatment. He claims Defendants did not provide him with his inhaler as prescribed.

"Deliberate indifference to a prisoner's serious medical needs violates the prisoner's Eighth Amendment right to be free from cruel and unusual punishment." *Warren v. Fanning,* 950 F.2d 1370,

1373 (8th Cir. 1991) (citing *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976)). To establish such a claim, a prisoner must "demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997) (alteration added). "A medical need is serious if it is 'obvious to the layperson or supported by medical evidence, like a physician's diagnosis.' " *Moore v. Jackson,* 123 F.3d 1082, 1086 (8th Cir. 1997) (quoting *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995)). A prison official is culpable for deliberate indifference to that serious medical need if the official is "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually draws that inference. *Bender v. Regier,* 385 F.3d 1133, 1137 (8th Cir. 2004); *see also Cook v. Pueppke,* 421 F. Supp.2d 1201, 1205 (E.D. Mo. 2006).

Plaintiff was prescribed an abuterol inhaler with directions to "inhale 2 puffs into lungs 3 times daily." (Exhibit 6). These prescription directions were repeated on Plaintiff's Medication Log. (Exhibit 5). The jailers testified they would take the log with them and have the inmate initial the log when he received his medication. The jailers also stated they would read the prescription directions on the inmates' medicine before dispensing. Thus, it is apparent the Defendants were aware of the need for Plaintiff to receive his inhaler three times a day. Indeed, the jailers stated they would have dispensed the medication as prescribed, save those occasions when the medication was unavailable because it was out to be refilled. It was also established that medications were dispensed three times a day: in the morning, at noon time, and then at night. According to his prescription, Plaintiff would need his inhaler at each medication call.

However, a review of the medication logs – both those submitted at hearing (Exhibit 5) and those filed as a supplement after the hearing (Doc. 110) as well as Plaintiff's testimony create an issue of fact as to whether Plaintiff was receiving his medication as prescribed.

In the medication logs presented at hearing (Exhibit 5), only four days out of the roughly one month period chronicled in those logs record the inhaler being given three times a day. The supplemental logs (Doc. 110) record medication given from May of 2005 until October of 2006. In that time frame, the correct dosage is recorded to have been given only on five days: December 26, 2005, July 15, 19, and 22 of 2006 and August 13, 2006. There are three days: August 10, 2005, October 5, 2005, and October 31, 2005 where the records indicate the inhaler was given four times.

The knowing failure to administer prescribed medicine can itself constitute deliberate indifference. *See Johnson v. Hay,* 931 F.2d 456, 461 (8th Cir. 1991); *see also Phillips v. Jasper County Jail*, 437 F.3d 791, 796 (8th Cir. 2006). Defendants clearly established it was the jail employees who were responsible for administering medications. The jailer would initial the log when he dispensed medication, and also have the inmate initial the log as well, reflecting the medication dispensed and the time and date. There was no evidence jailers Hamilton, Ross, Bradshaw, Kimery, or Nietert were responsible for handing out medication at the times the medication was not dispensed.

The medication logs show that "RC" dispensed medication in a pill form to the Plaintiff at the morning medication call, but not his inhaler. The logs show this occurred on October 10, 11, 18, 19, 23, and 26. (*See* Exhibit 5). However, there is an issue of fact whether the initials "RC" on some of the medication log entries belong to Defendant Ciampoi. Defendant Ciampoi testified there was another employee with the same initials who would occasionally dispense medications. While it may

be the initials "RC" do not belong to Defendant Ciampoi or that the inhaler was actually dispensed but not recorded, these are issues which can not be resolved by an evidentiary hearing. Therefore, Plaintiff has raised a genuine issue of fact regarding Defendant Ciampoi's deliberate indifference to his condition. Plaintiff also stated, and the record shows, Plaintiff filed grievances regarding his lack of medication. Defendants Hayes and Lewis may have had knowledge of the failure to medicate.

I recommend there are issues triable to a jury regarding Plaintiff's missed medication claims against Defendants Ciampoi, Hayes, and Lewis. I recommend there are no issues triable to a jury regarding Plaintiff's missed medication claims against all other Defendants.

### *Failure to allow medical testing*

Plaintiff alleges that Defendant Lewis "refused" him medical testing his doctor ordered. Plaintiff submitted exhibits 2A and 2B on this point. Exhibit 2A notes the doctor's "plan" is for a "CBC, [unreadable}, CT abd, and UA" test. Exhibit 2B lists four tests and the price of each. However, no evidence was presented at hearing regarding Defendant Lewis denying Plaintiff to have these tests. Indeed, Exhibit 4A indicates some of these tests may have been performed. Moreover, Plaintiff did not know the nature of the tests, what they would have revealed, and has no injury from the alleged denial of the test. Although he has gone through the ADC's diagnostic unit, these tests have not been ordered for him again.

Accordingly, I recommend there are no issues triable to a jury regarding Plaintiff's claim Defendant Lewis denied him medical testing.

### *Denial of dental treatment*

Plaintiff also complains he was denied dental treatment. Plaintiff states he was taken to see the dentist and the dentist pulled two of his teeth but refused to pull any more teeth, although there

were more that needed to be pulled.  However, Plaintiff testified he did not seek to have any further dental appointments while in the Franklin County Jail.  Plaintiff offered no proof of any harm he suffered from all of his pull-able teeth not being pulled at the time of his dental appointment.  Plaintiff also offered no evidence any limits on how many teeth the dentist would pull in one visit were made by the Defendants.  Accordingly, I recommend there are no issues triable to a jury regarding Plaintiff's claim of denial of dental care.

### *Unclean conditions of confinement*

Plaintiff has alleged unclean conditions of confinement in the Franklin County Jail.  However, all the testimony from former inmates established that cleaning supplies were available on a daily basis.  Plaintiff also established no injury from any unclean conditions of confinement.  Accordingly, I recommend there are no issues triable to a jury regarding Plaintiff's claim of unclean conditions of confinement.

### *Denial of access to an attorney and the law library*

Plaintiff alleges he was denied access to his attorney and to law books while housed in the Franklin County Jail.  At the hearing, Defendant Lewis testified the phones in the day room are accessible to all inmates and are turned on from 9:00 a.m. until 9:00 p.m. each day.  Additionally, law books are available from the Sheriff's office if the inmates provide title and volume number.  Plaintiff stated he was represented by counsel and offered no evidence of how he was denied counsel or access to the law books held at the sheriff's office.  In addition, Plaintiff offered no evidence of any prejudice he suffered from any alleged denials.

Accordingly, I recommend there are no issues triable to a jury regarding Plaintiff's claim of denial of access to an attorney and/or access to the law library.

*Inhumane treatment*

Plaintiff has alleged inhumane treatment while housed in the Franklin County Jail, but presented no evidence of this treatment. Accordingly, I recommend there are no issues triable to a jury regarding Plaintiff's claim of inhumane treatment.

*Violation of the right against self- incrimination*

Plaintiff alleged his right against self-incrimination was violated. Plaintiff did not raise this issue at hearing or present any evidence. Accordingly, I recommend there are no issues triable to a jury regarding Plaintiff's claim of a violation of the right against self-incrimination.

### 3. Conclusion

Assuming the facts as stated by Plaintiff are true, and resolving all reasonable inferences in favor of the Plaintiff, it is my recommendation the evidence is insufficient to support a finding on Plaintiff's claims of denial of medical testing, denial of dental treatment, unclean conditions of confinement, denial of access to an attorney and to the law library, inhumane treatment, and violation of the right against self-incrimination. I recommend there are no issues triable to a jury on these matters. I recommend the Plaintiff's Complaint be dismissed on these issues.

As to Plaintiff's claim he was denied medical treatment, I recommend there are issues triable to a jury regarding Defendants Ciampoi, Lewis, and Hayes. I recommend there are no issues triable to a jury on this matter regarding the remaining Defendants.

This report and recommendation leaves for a later date Plaintiff's claim of denial of medical treatment against Defendants Ciampoi, Lewis, and Hayes.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections**

**may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 16th day of October 2008.**

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE
